# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES<br><br>– vs. –<br><br>WILLIAM A. MERLINO | 2:19-cr-00717-GAM<br><br>Criminal Action |

**DEFENDANT WILLIAM A MERLINO'S RENEWED MOTION FOR JUDGMENT OF ACQUITTAL UNDER FED. R. CRIM. P. 29**

GAMBURG & BENEDETTO LLC

Robert Gamburg (Pa. I.D. No. 68808)
Daniel J. Auerbach (Pa. I.D. No. 316856)
1500 John F. Kennedy Blvd., Suite 1203
Philadelphia, PA 19102
(215) 567-1486
robert@gamburglaw.com
dan@gamubrglaw.com

TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................... iii

INTRODUCTION ........................................................... 1

BACKGROUND ............................................................ 2

QUESTIONS PRESENTED ................................................... 3

STANDARD OF REVIEW .................................................... 4

LEGAL ARGUMENT ........................................................ 4

    I.   The "fraud on the FDA" theory should not apply at all. ............ 4

        a.   The Third Circuit requires deception of consumers in
            felony misbranding cases ...................................... 5

        b.   The "fraud on the FDA" theory should not apply to
            misbranding cases even setting aside existing Third
            Circuit precedent .............................................. 9

    II.  There was no fraud on the FDA here .............................. 11

    III. This Court should not modify the conviction to misdemeanor
        misbranding but instead acquit Dr. Merlino ....................... 14

CONCLUSION ............................................................ 15

## TABLE OF AUTHORITIES

**Cases**

*Allison v. United States*,
   409 F.2d 445, 451 (D.C. Cir. 1969)............................................. 14

*United States v. Abarquob*,
   294 F. App'x 722 (3d Cir. 2008) (non-precedential) ........................... 8

*United States v. Abbott Labs.*,
   505 F.2d 565 (4th Cir.1974), *cert. denied*, 420 U.S. 990 (1975) .................. 6

*United States v. Abuarquob*,
   294 F. App'x 722(3d Cir. 2008).............................................. 5

*United States v. Bansal*,
   663 F.3d 634 (3d Cir. 2011) ............................................. 4–5, 8

*United States v. Barnett*,
   587 F.2d 252 (5th Cir.), *cert. denied*, 441 U.S. 923 (1979) ....................... 6

*United States v. Bradshaw*,
   840 F.2d 871 (11th Cir. 1988) ............................................. 8, 10

*United States v. Dr. David Roberts Veterinary Co.*,
   104 F.2d 785 (7th Cir. 1939) ................................................ 6

*United States v. Ellis*,
   326 F.3d 550 (4th Cir. 2003)................................................ 8

*United States v. Goldberg*,
   538 F.3d 280 (3d Cir. 2008) .............................................. 5–7

*United States v. Greenbaum*,
   138 F.2d 437 (3d Cir. 1943) ........................................... 1, 5–7, 9

*United States v. Haga*,
   821 F.2d 1036 (5th Cir. 1987) ............................................... 6

United States v. Hiland,
   909 F.2d 1114 (8th Cir. 1990) ............................................... 12

*United States v. Indust. Labs. Co.*,
   456 F.2d 908 (10th Cir.1972) ............................................ 6, 12

## TABLE OF AUTHORITIES (CONTINUED)

**Cases (continued)**

*United States v. Jamieson-McKames Pharms., Inc.*,
    651 F.2d 532 (8th Cir.1981), *cert. denied*, 455 U.S. 1016 (1982) .................. 6

*United States v. Mitcheltree*,
    940 F.2d 1329 (10th Cir. 1991) ........................................ 11–12, 14

United States v. Petersen,
    622 F.3d 196 (3d Cir. 2010) ................................................ 14

*United States v. Raymer*,
    941 F.2d 1031 (10th Cir. 1991) ............................................. 14

*United States v. Rojas*,
    841 F. App'x 449, 451 (3d Cir. 2021),
    *vacated on other grounds* 142 S. Ct. 421 (2021) ................................ 5

*United States v. Zayas*,
    32 F.4th 211, 217 (3d Cir. 2022) ............................................ 4

**Statutes**

21 U.S.C. § 331 ................................................... 2, 4, 9, 11, 13

21 U.S.C. § 333 ...................................................... 2, 4, 11

21 U.S.C. § 352 ............................................................ 10

21 U.S.C. § 360 ............................................................ 13

21 U.S.C. § 387e ........................................................... 13

28 U.S.C. § 2106 ........................................................... 14

**Rules**

FED. R. CRIM. P. 29 ......................................................... 4

**INTRODUCTION**

Dr. Merlino sold DNP to people who wanted it and knew what they were getting. That is not felony misbranding—the sole charge against him. Such charges require proof that Dr. Merlino intended to defraud or mislead. A defendant lacks such intent if the customer "knows what he is getting and gets what he wants." *United States v. Greenbaum*, 138 F.2d 437, 439 (3d Cir. 1943).

The Government's own post-conviction statements make clear that it lacks the evidence necessary to convict. Commenting about this case in a press release, United States Attorney Romero explained: "The defendant knowingly skirted our country's regulations by marketing an unsafe chemical to *people hoping for a quick and easy solution*."[1] Similarly, AUSA Burns stated: "The defendant's business was all about human consumption. He encapsulated his product. *He knew that people were buying his product for human use*."[2]

In short, the Government's own lawyers—and the evidence at trial—told us that Dr. Merlino's customers knew what they were getting and got what they wanted. There was insufficient evidence to find that he had the intent necessary to convict.

Moreover, even accepting the Government's contrary "fraud on the FDA" theory, there was no such fraud. Dr. Merlino did not communicate with the FDA much less defraud it.

---

[1] DEPARTMENT OF JUSTICE, *Retired New Jersey Doctor Convicted at Trial of Selling Toxic Chemical as Weight-loss Drug* (Aug. 8, 2022), *available at* bit.ly/3SVqIcT (last visited Aug. 17, 2022).
[2] A recording of a radio story that contains AUSA Burns's statement is available bit.ly/3A2MZN5 (last visited Aug. 17, 2022).

### BACKGROUND

The Government brought a one-count indictment against Dr. Merlino. The indictment charged him with "misbranding" DNP that he sold from his home in New Jersey into Pennsylvania. The law precludes "the introduction or delivery for introduction into interstate commerce of any . . . drug . . . that is . . . misbranded." 21 U.S.C. § 331(a).

Misbranding can be either a misdemeanor or a felony. 21 U.S.C. § 333(a). The Government chose to seek only felony charges, pursuing only the penalties available under § 333(a)(2). The critical distinction is that felony misbranding requires proof of "intent to defraud or mislead." *Id.* The Government chose not to submit lesser charges to the jury. It thereby shouldered the burden of proving the intent element.

The indictment specified that the DNP was misbranded because the "labeling . . . [stated] that it was fertilizer and/or 'not for human consumption' when [Dr. Merlino] knew and intended that the DNP [would] be used and consumed as a human drug." At trial, the Government presented evidence that Dr. Merlino sold DNP, while indicating that it was not intended for "human consumption."

The Government showed how that was all a wink and a nod. Government Exhibit 1 was a tweet from Dr. Merlino: "DNP available on eBay for weight loss. is not legal in US so listed as a fertilizer on eBay. **#Diet #weightloss**." Government Exhibit 2 was an eBay listing. The listing explained that Dr. Merlino had "used DNP for patients, when it was legal." The ad strangely explained that Dr. Merlino's experience as a human doctor—not as a botanist—indicated that DNP

would work "on plants" to "slow growth." Various other exhibits and testimony made clear that Dr. Merlion's customers were purchasing his DNP for human consumption.

The Government presented no evidence that anybody was confused about what he was getting. The customers got what they wanted.

Likely recognizing the absence of a misled consumer, the Government's theory on deception was that Dr. Merlino intended to deceive the FDA. In its words, it viewed his conduct as a "fraud on the FDA." However, the Government presented no evidence that Dr. Merlino ever gave false information to the FDA. Its theory was instead and essentially that Dr. Merlino failed to secure the FDA's approval to market DNP and marked his products "not for human consumption."

### QUESTIONS PRESENTED

1. Should this Court grant Dr. Merlino's motion for judgment of acquittal because either:

    a. Felony misbranding requires proof of an intent to deceive those who purchase a drug from the defendant?

    b. There was no proof that Dr. Merlino intended to deceive any government agency?

*Suggested answer: Yes.*

#### STANDARD OF REVIEW

Under FED. R. CRIM. P. 29(c)(1), a defendant may renew his motion for judgment of acquittal within fourteen days of verdict. This Court should grant the motion if no "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Zayas*, 32 F.4th 211, 217 (3d Cir. 2022) (quoting *United States v. Bansal*, 663 F.3d 634, 665 (3d Cir. 2011)).

#### LEGAL ARGUMENT

The Government's "fraud on the FDA" theory fails. The Third Circuit's precedent is inconsistent with its application in misbranding cases. Even if the Third Circuit had not settled the matter, this Court should reject its application to misbranding cases. And there was no fraud on the FDA anyway.

I.      **The "fraud on the FDA" theory should not apply at all.**

We believe that it is undisputed that the Government's case on the intent element rises or falls with its "fraud on the FDA" theory. If the Government should argue that Dr. Merlino somehow intended to deceive his customers, we will address that issue on reply.

Accordingly, this motion turns on the nature of the intent requirement for felony misbranding. The relevant statute provides: "if any person . . . [violates 21 U.S.C. § 331] with the intent to defraud or mislead, such person shall be imprisoned for not more than three years or fined not more than $10,000, or both." 21 U.S.C. § 333(a)(2).

The critical question that the statute does not expressly answer is who must be defrauded or misled. As we argue below, this Court should find that, in misbranding cases, it must be the consumer.

### a. The Third Circuit requires deception of consumers in felony misbranding cases.

The undersigned believes that the Third Circuit has addressed the intent requirement in exactly five decisions—one of which was vacated after the Government confessed error on appeal.[3] The four cases that remain good law uniformly look to whether the defendant deceived his *customers*—not the Government. They are inconsistent with the Government's "fraud on the FDA" theory.

The only decision that squarely discusses whom the defendant must deceive is *United States v. Greenbaum*. There, the Government charged the defendant with selling rotten eggs. The question at stake was whether misdemeanor misbranding requires knowledge and willfulness. As discussed, felony misbranding has an intent requirement. But the statute specifies no intent requirement for misdemeanor misbranding. The Government argued that this difference meant that there was no *mens rea* requirement for misdemeanor misbranding. 138 F.2d 437, 439 (3d Cir. 1943).

---

[3] *United States v. Goldberg*, 538 F.3d 280, 283 (3d Cir. 2008); *United States v. Greenbaum*, 138 F.2d 437, 437 (3d Cir. 1943); *United States v. Bansal*, 663 F.3d 634, 666 (3d Cir. 2011); *United States v. Rojas*, 841 F. App'x 449, 451 (3d Cir. 2021), *vacated on other grounds* 142 S. Ct. 421 (2021); *United States v. Abuarquob*, 294 F. App'x 722, 725 (3d Cir. 2008).

While the Third Circuit ultimately agreed with the Government's view that there was no *mens rea* requirement, it rejected the Government's way to get there. Its reasons for doing so are critical because they directly address the issues at stake here.

In *Greenbaum*, the Third Circuit found that the intent to defraud or mislead was different from knowledge and willfulness. One could intentionally and knowingly put a misbranded substance into interstate commerce. But doing that is not proof by itself of deception. Where "the [buyer] of the shipment knows what he is getting and gets what he wants," there is no intent to defraud or mislead. In short, the Third Circuit looked only to whether the *consumer* was defrauded or misled. *Id.*; *see also United States v. Haga*, 821 F.2d 1036, 1041 (5th Cir. 1987) (finding that cases permitting felony conviction have "ordinarily been based on a seller's intent to defraud or mislead *purchasers,* and not on the theory that a defendant has defrauded or misled the government by evading or violating its regulatory systems.") (emphasis in original).[4]

All three decisions of the Third Circuit that remain good law agree with that approach. Most relevant is *United States v. Goldberg*, where the Third Circuit reversed a felony misbranding conviction under facts similar to Dr. Merlino's case.

---

[4] For that proposition, *Haga* cited: *United States v. Jamieson-McKames Pharms., Inc.*, 651 F.2d 532 (8th Cir.1981), *cert. denied*, 455 U.S. 1016 (1982); *United States v. Abbott Labs.*, 505 F.2d 565 (4th Cir.1974), *cert. denied*, 420 U.S. 990 (1975); *United States v. Indust. Labs. Co.*, 456 F.2d 908 (10th Cir.1972); *United States v. Dr. David Roberts Veterinary Co.*, 104 F.2d 785 (7th Cir. 1939); and *United States v. Barnett*, 587 F.2d 252 (5th Cir.), *cert. denied*, 441 U.S. 923 (1979). We recognize that more recent precedent outside of the Third Circuit now generally approves of the "fraud on the FDA" theory to differing extents, as discussed in Section II.

The defendant sold steroids purportedly for horses. The Government prosecuted him on the theory that the steroids weren't actually being sold for horses but rather for human consumption. After his conviction, the defendant appealed to challenge the intent element at issue here. 538 F.3d 280, 283 (3d Cir. 2008).

The Government offered three facts to support the conviction (we don't discuss the third because the Third Circuit found it was contrary to the record). First, the defendant had his customers submit a "Product and Use Disclaimer" whereby customers had to attest that the laws of their state permitted them to give drugs to their own animals. Many customers provided false statements that they could do so. The Third Circuit found that any deceptive statements were that of the customers—not the defendant. As a result, the disclaimer could not establish that the defendant "misled anyone." *Id*. at 289.

Second, the Government pointed to literature the defendant's company had previously provided suggesting that its physician could prescribe the medicine. Because the defendant did not actually provide the literature to customers in connection with the transactions at issue, the Third Circuit found that there was no misrepresentation. *Id.*

The Third Circuit therefore reversed the defendant's convictions. That analysis confirms our interpretation of the effect of *Greenbaum*. In *Goldberg*, the Third Circuit looked only to whether the consumer was deceived. There was no suggestion that any interaction between the defendant and the FDA would somehow matter. Nor did the obvious use of the "Product and Use Disclaimer" to

conceal human steroid distribution matter. All that mattered was whether the defendant misled his customers.

Even the two Third Circuit decisions that affirm a conviction look only to the defendant's interactions with his customers. In *United States v. Bansal*, the defendant ran an internet pharmacy that sold controlled substances from India. The defendant told his customers that no prescriptions were necessary or that he could furnish the prescription. The Third Circuit found that the deception of the customers regarding the need for prescriptions was sufficient to support a finding of intent to defraud or mislead. 663 F.3d 634, 666 (3d Cir. 2011).

In *United States v. Abarquob*, the defendant sold a flu vaccine to a hospital. He told the hospital that the FDA had approved the vaccine. That was not true. The panel found that the false statements to the customer hospital regarding FDA approval were sufficient to find the requisite intent. 294 F. App'x 722, 725 (3d Cir. 2008) (non-precedential).

Both of these cases again focus solely on the interaction between the defendant and his customers. They provide no support for the notion that a purported "fraud on the FDA" can establish the deceptive intent necessary for felony misbranding charges.

We anticipate that the Government will support its "fraud on the FDA" theory by relying on *United States v. Bradshaw*, 840 F.2d 871 (11th Cir. 1988) and *United States v. Ellis*, 326 F.3d 550 (4th Cir. 2003)—the cases it cited in support of its proposed jury instruction on intent. *Bradshaw*, at least, applies a "fraud on the FDA" to misbranding.

These decisions from the Fourth and Eleventh Circuit and inconsistent with the Third Circuit's precedent and so this Court should reject them. *Greenbaum* stated that there could be no deceptive intent where the defendant did not mislead the customer. That is necessarily inconsistent with the "fraud on the FDA" theory. That theory is also contrary to the analysis of every other Third Circuit case that considers the intent element. Those cases look solely to the interaction between the defendant and his customers.

*   *   *

Because the "fraud on the FDA" theory does not exist in this Circuit, the Government failed to present evidence sufficient to convict Dr. Merlino.

      **b.**      **The "fraud on the FDA" theory should not apply to misbranding cases even setting aside existing Third Circuit precedent.**

We acknowledge that *Bradshaw* and other decisions apply the "fraud on the FDA" theory to misbranding cases.[5] However, this Court should reject the application of the theory to misbranding cases on its merits—even setting aside *Greenbaum.*

In considering that question, the broader statutory framework is important. 21 U.S.C. § 331 criminalizes misbranding in subsection (a). But it also criminalizes a number of other acts in its other subsections. Many of those acts concern violation of the FDA's regulations or interference with its regulatory process. The statute criminalizes 56 separate types of conduct, in subsections (a) through (ddd). To use

---

[5] *Ellis* does not. *Ellis* adopted it only concerning a failure to register with the FDA in violation of § 331(p).

*Bradshaw*'s language: "Several of the acts § 331 prohibits concern only the government." 840 F.2d 871, 874 (11th Cir. 1988).

Where *Bradshaw* goes wrong is by applying the *mens rea* requirements in the same way to every single possible violation of § 331, regardless of whether it involves interaction between the defendant and his customers or the defendant and the FDA. For those violations that "concern only the government," a "fraud on the FDA" theory makes sense. If an offense concerns only the interaction between the defendant and the FDA, then the only conceivably wrongful intent would concern the FDA. Without a "fraud on the FDA" theory, the Government could never prove the intent necessary to establish a felony violation.

Based on the fact that many violations of § 331 will necessarily involve the defendant's interaction with the FDA, *Bradshaw* concluded that the "fraud on the FDA" theory had to apply to *all* possible violations of § 331—including misbranding. 840 F.2d 871, 874 (11th Cir. 1988). But that is not so. We understand why the theory must apply to, say, failure to register with the FDA in violation of § 331(p) as *Ellis* recognized. But that does not mean the theory also applies to § 331(a).

Misbranding is not about the defendant's interaction with the FDA. Instead, it is about *consumer* protection. With exceptions not relevant here, drugs are misbranded when the label or labeling provides the consumer with inaccurate information. *See* 21 U.S.C. § 352. Misbranding does not involve any interaction with the FDA.

Accordingly, in assessing the *mens rea* requirement for felony branding, this Court should consider only the defendant's intent regarding consumers. Section 333(a)(2) permits felony conviction only where the defendant commits the violation of § 331 "with the intent to defraud or mislead." As to misbranding, that means that the question is what intent the defendant had while actually introducing the misbranded drug into commerce. Any intent regarding the failure to secure FDA approval is irrelevant because it isn't part of the conduct that establishes a violation of § 331(a). The defendant's intent about matters that are unrelated to the actual offense conduct is irrelevant.

In misbranding cases, there should be no "fraud on the FDA" theory. The Government has ample recourse to pursue those who conceal their operations from the FDA. At the very least, it can bring "failure to register" charges under § 331(p). But the Government failed to do that here.

## II.     There was no fraud on the FDA here.

Even if this Court does not categorically reject the "fraud on the FDA" theory in a misbranding case, this Court should still overturn Dr. Merlin's convictions. The evidence failed to establish any such fraud.

Section 333(a)(2) requires an intent to "defraud or mislead." At minimum, that should require an affirmative act to mislead the FDA, or a communication to the FDA that omits material information. *See United States v. Mitcheltree*, 940 F.2d 1329, 1348 (10th Cir. 1991) (adopting "fraud on the FDA" theory but requiring misleading or defrauding "by a misrepresentation or omission"). As the Tenth

Circuit put it, "fraud on the FDA" requires that the defendant "consciously sought to mislead drug regulatory authorities." *Id.* at 1347. In short, someone is not liable for fraud if he never communicated anything to the supposedly defrauded person.

The Tenth Circuit's decision in *United States v. Mitcheltree*, 940 F.2d 1329 (10th Cir. 1991) illustrates this principle clearly. There, the Tenth Circuit overturned the defendant's misbranding conviction for insufficient evidence of fraud on the FDA. The defendant sold MDMA before it was scheduled as a controlled substance. The Government contended that the MDMA was misbranded for a variety of reasons. Most relevant here, it claimed misbranding because MDMA "was health endangering and was manufactured in an unregistered establishment." To meet the intent requirement, the Government argued that the defendant conducted his activity in a "covert manner" and by pretending to comply with law enforcement during their investigation of MDMA distribution.

The Tenth Circuit found that these facts failed to support a "fraud on the FDA" theory.[6] It required a "proof of an intent to mislead or defraud *which is connected to the misbranding violation under § 331*." *Id.* at 1349 (emphasis in original) (citing *United States v. Indust. Labs*, 456 F.2d 908, 910–11 (10th Cir. 1972) and *United States v. Hiland*, 909 F.2d 1114, 1128 (8th Cir. 1990)).

---

[6] *Mitcheltree* involved purported fraud on local police, not the FDA. For consistency, we use the "fraud on the FDA" phrasing to describe the general notion of liability based on deception of the government rather than of customers.

Applying that requirement, the Government's evidence did not suffice. "Contrary to the government′s position, covert criminal activity involving drugs is not synonymous with misbranding with an intent to mislead or defraud." Accordingly, the Tenth Circuit found insufficient evidence because: "What is missing in this case is (1) any conscious involvement by the defendant with a government agency involved in consumer protection which performs any of the above or similar functions [regulating drugs], and (2) any link between conscious misbranding activity and a specific intent to mislead or defraud such an agency."

The same is true here. There were no communications between Dr. Merlino and the FDA. Dr. Merlino could not have somehow intended to defraud or mislead it.

There is an additional flaw in the Government's theory. What it is really saying is that Dr. Merlino failed to register with the FDA and to seek its approval for DNP distribution. And it's true that those who manufacture, prepare, compound, or process drugs must register with the FDA. 21 U.S.C. § 360, 387e. But failing to do so is not a violation of § 331(a). It is a violation of § 331(p), which squarely criminalizes the failure to register.

For whatever reason, the Government did not indict Dr. Merlino for violating § 331(p) even though it has brought similar charges in similar cases. But what's done is done. Any theory based on the failure to register with the FDA is not at issue in this case. This Court should not permit the Government to import it through the backdoor.

### III. This Court should not modify the conviction to misdemeanor misbranding but instead acquit Dr. Merlino.

The Government deliberately chose to submit only felony charges to the jury. That decision was to Dr. Merlino's detriment because the jury might have opted for misdemeanor conviction had the Government gave it that option. Given the Government's deliberate choice to forgo misdemeanor charges, this Court should enter a judgment of acquittal instead of modifying the offense under 28 U.S.C. § 2106. *See Mitcheltree*, 940 F.2d at 1352 n.17 (declining to order the entry of misdemeanor convictions after vacating felony convictions where "no lesser included offense instructions were given"); *United States v. Raymer*, 941 F.2d 1031, 1045 (10th Cir. 1991) (making the same finding as to Mitcheltree's co-defendant).

We recognize that the failure to give a "lesser included" instruction is not dispositive and that this Court may modify the conviction regardless. *United States v. Petersen*, 622 F.3d 196, 207 (3d Cir. 2010). However, this court should not do so here. So modifying a conviction is improper where "undue prejudice will result to the accused." *Id.* at 944 (quoting *Allison v. United States*, 409 F.2d 445, 451 (D.C. Cir. 1969)).

Modifying the charges would impose undue prejudice on Dr. Merlino. The Government's choice about what charges to bring shaped both any plea negotiations and our trial strategy. The Government reaped benefits from its decision about how to plead its case. It should not now be able to deny the inevitable drawback of those pleading decisions. Criminal prosecutions are not, and should not be, a game of "heads we win, tails you lose."

## CONCLUSION

We ask this Court to enter a judgment of acquittal.

Respectfully submitted,

*/s/ Daniel J. Auerbach*
Robert Gamburg (Pa. I.D. No. 68808)
Daniel J. Auerbach (Pa. I.D. No. 316856)
Gamburg & Benedetto LLC
1500 John F. Kennedy Blvd., Suite 1203
Philadelphia, PA 19102
(215) 567-1486
robert@gamburglaw.com
dan@gamburglaw.com

Dated: August 19, 2022

## CERTIFICATE OF SERVICE

This document has been filed electronically and is available for viewing and downloading from the ECF system. Service is complete on the United States because its counsel is a Filing User.

Respectfully submitted,

*/s/ Daniel J. Auerbach*
Robert Gamburg (Pa. I.D. No. 68808)
Daniel J. Auerbach (Pa. I.D. No. 316856)
Gamburg & Benedetto LLC
1500 John F. Kennedy Blvd., Suite 1203
Philadelphia, PA 19102
(215) 567-1486
robert@gamburglaw.com
dan@gamburglaw.com

Dated: August 19, 2022